## BADEAU *v.* TYLEE and others.

### ASA HALL *v.* The same defendants; and nine other causes against the same defendants.

A tenant, upon the death of the lessor, may call upon the party claiming the rent to prove his title derived from the lessor, where another person interposes a conflicting claim, derived from the same source.

B. was tenant of Mrs. T. from year to year, at an annual rent, payable quarterly. Upon the death of Mrs. T., her husband, T., claimed the tenement and the rent as her devisee, and the same were claimed by her heirs at law. Each party threatened to distrain for the rent. B. thereupon filed a bill of interpleader against T. and the heirs of Mrs. T.

A demurrer to the bill was overruled.

Dec. 26, 1843 ; Feb. 1, 1844.

THE bills in these several cases stated in substance that the demised premises in 1842–3 belonged in fee to Mrs. Tylee and Mrs. Dempsey; one moiety to each. The several complainants hired the premises respectively of Mr. Tylee, acting on behalf of his wife and Mrs. Dempsey. They hired for one year from May 1, 1842, and are in as tenants from year to year, and have the right to the possession until May 1, 1844. The rents are payable at the usual quarter days. The complainant, Badeau, pays $800 per year, besides the taxes, for his tenement. Mrs. Tylee died on the 22d of February, 1843. Mr. Tylee, at the end of the then current quarter, claimed the half of the rent, and distrained for it. On this compulsion, the tenants paid to him the rent for that quarter. He claims and insists that his wife, after their marriage, made a will in his favor, and thereby devised her half of the premises to him in fee.

Mrs. Tylee never had issue, and the other defendants, who are her heirs, insist that Mr. Tylee is not tenant by the curtesy, and that his wife, by reason of her coverture, could not make a valid will. They claim the rent of these parties, and threaten to sue or distrain for the quarter ending August 1,

1843. Mr. Tylee also claims the rent, and makes the same threats. The parties say, they do not object to his title, claiming through his wife, up to the time of her death. They have not recognized him as their landlord. They are ready and desirous to pay their rents, but they are unable to ascertain to whom the same ought to be paid. And they thereupon interplead Mr. Tylee and the heirs of Mrs. Tylee.

To these bills the defendant, Tylee, demurred for want of equity; and also assigned for causes of demurrer, that the complainants have not respectively set forth by what title they hold their tenements; and that being the tenants of the defendant, they are not entitled to interplead him.

*B. S. Brooks* and *B. W. Bonney*, for the defendant, Tylee, in support of the demurrer.

*C. Edwards*, for the respective complainants.

THE ASSISTANT VICE-CHANCELLOR.—The objection that the complainants' title is not sufficiently set forth, is not well taken. The bills show a tenancy under Mrs. Tylee, continuing to May 1, 1844. The defendant's threats to sue or distrain for the rent in August, show a subsisting tenancy during the year commencing on the first of May, 1843.

2d. What has been said, disposes of the objection that the complainants came in under Mr. Tylee as his tenants, and therefore cannot dispute his title. This was the principal ground of the demurrer, but I think it is not presented by the bill.

They admit no tenancy under him; nor any right in him in his wife's life-time, except through her. If it were necessary to sustain the bills on these demurrers, the court would construe the statement to be, that Mrs. Tylee had a separate estate, and thus demised in her own right; and upon her death her husband claimed under her will, and her heirs by descent.

It is equally competent and effectual to consider the demise as made in due form by both Mr. and Mrs. Tylee, the property being her fee, and he having the estate for her life. Then at her death, his estate *per auter vie* terminated, although the

term continued, and the rent from thence became payable to the next taker of the inheritance. The tenant might set this up in an action by Tylee for the rent. (*Comyn's Landlord and Tenant*, 521, and the cases there cited.) And upon the claim being made for the rent by the husband insisting on a title by will, and by the heirs insisting by descent, the tenants, if unable to ascertain the right, may well file a bill of interpleader. The allegation of this inability, when it does not appear expressly that the right of one party or the other making the claim is wholly unfounded, appears to obviate the difficulty suggested by the Chancellor in *The Mohawk and Hudson Rail-Road Co.* v. *Clute*, (4 Paige's R. 392.)

3. This leads to the consideration of the general demurrer.

The case is clearly a proper one for an interpleader. The parties are the tenants of Mrs. Tylee. One defendant claims the rent from them as her devisee in fee, and the other defendants claim it from them as her heirs.

In *Hodges* v. *Smith*, (1 Cox Ch. Cas. 357 ; and 16 Ves. 203, stated by the master of the rolls,) such a bill was sustained by a tenant for the purpose of ascertaining to which of two different claimants, he was to pay his rent.

In *Dungey* v. *Angove*, (2 Ves. Jr. 304. 312,) where the bill was dismissed, Lord Rosslyn said that a bill of interpleader would lie, where the tenant may be liable to pay the rent to one of two different persons ; and he puts a variety of cases, where the tenant, affirming the title, the tenure, and the contract by which the rent is payable, but where it is uncertain to whom it is to be paid, may file a bill of interpleader.

In *Cowtan* v. *Williams*, (9 Ves. 107,) Lord Eldon sustained such a bill by the lessee of tithes against the vicar and his assignees under an insolvent act, which the vicar had taken subsequent to the lease ; both claiming the rent.

In *Clarke* v. *Byne*, (13 Ves. 383,) the same great jurist affirmed the principle established in *Cowtan* v. *Williams*, and applied it to claimants of the rent under voluntary transfers made by the lessor.

In *Angell* v. *Hadden*, (15 Ves. 244, and 16 id. 202,) the same principle was enforced in the case of annuities charged upon land.

In *Jew* v. *Wood*, (3 Beavan's R. 579,) before the Master of the Rolls, and affirmed by the Chancellor on appeal, (1 Craig and Ph. 185; S. C. 5 Lond. Jurist Rep. 954,) the complainant was a tenant of James Wood, and after Wood's death paid rent to his executors and devisees for two or three years, when the heirs of Wood gave him notice to pay to them in future. He ceased to pay altogether, and the executors and devisees distrained. He then filed a bill of interpleader, and it was sustained.

The learned counsel for the complainants furnished me with a report of the case of *Doran* v. *Everitt and others*, (2 Irish Eq. Rep. 28,) before the Master of the Rolls, which is directly in point, and goes far beyond the cases under consideration. The complainant demised from A. M'Dermott for 21 years if E. P. so long lived. The lessor was seised in fee and at his death left a will made in due form, devising the estate in fee to the defendant C. Everitt, as his wife, and made her the executrix. She proved the will, and obtained probate in the ecclesiastical court. She claimed the rents of the complainant, and he paid them to her from 1832 to 1837. In November, 1837, he was served with a written notice by the defendant, T. M'Dermott, claiming to be the heir at law of the lessor, stating that the will was obtained by fraud, and that a suit had been instituted to avoid it; and cautioning the complainant against paying any rent to C. Everitt &c. Such a suit was in fact prosecuted by him against Everitt. T. M'Dermott claimed to be entitled to the rent from the service of this notice, and several notices were served on the complainant by each party, claiming the rent, demanding instant payment, and threatening to distrain. The tenant withheld his rent for two years and then interpleaded the wife and heir. It was objected to the bill that it showed a clear legal title in the defendant Everitt, under the will of the lessor, to receive the rents; and that the precarious claim of A. M'Dermott grounded upon a loose and unsupported allegation of fraud, did not justify the tenant in refusing to pay his rent to the legal owner, or in filing an interpleader bill. The court, nevertheless, held it to be a sufficient case for coming into equity for relief.

The cases of *Crawshay* v. *Thornton*, (2 M. & C. 1, 21; S. C. 7 Simons, 391,) and *Cooper* v. *De Tastet*, (1 Taml. 177,) which were cited and relied upon by the defendant's counsel; were cases of bailees, in which the complainants had come under some engagement or duty to one of the parties claiming the goods, or had otherwise so conducted, that there were rights and liabilities existing between the parties, independent of the title to the goods in question, and which might not depend upon the decision of the question of title. And *Pearson* v. *Cardon*, (2 R. & Mylne, 606; S. C. 4 Simons, 218,) was a case of the same kind, and brought within the same principle.

Thus it is clearly settled in England by the uniform current of the decisions, that the tenant upon the death of his lessor, may call upon the party claiming the rents to prove his title derived from the lessor, where another person interposes a conflicting claim, derived from the same source.

The equity and good sense of this rule are so manifest, that I have no hesitation in adopting it in these cases.

The demurrers must be overruled, and the defendant is to answer and pay the costs within twenty days.